UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES KESTER,<br><br>           Plaintiff,<br><br>     v.<br><br>KOKOR,<br><br>           Defendant. | No.  2:20-cv-1516 DAD AC P<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is defendant's motion for summary judgment.  ECF No. 44.

I.      Procedural History

On screening the complaint pursuant to 28 U.S.C. § 1915A, the court found that plaintiff had stated a claim against defendant Kokor for deliberate indifference but had failed to state any cognizable claims against defendants California Correctional Health Care Services (CCHCS), Johal, Sommer, and Totorice.  ECF No. 9.  Instead of amending the complaint, plaintiff elected to proceed on his claim against Kokor and voluntarily dismissed his claims against the other defendants without prejudice.  ECF No. 12.  After the close of discovery, defendant moved for summary judgment (ECF No. 44), which plaintiff opposes (ECF No. 58).

////

II. Plaintiff's Allegations

The complaint alleges that in June 2019, defendant Kokor, a prison doctor, discontinued plaintiff's prescription for gabapentin for no reason, after which he received only ibuprofen and acetaminophen, which did nothing for his pain. ECF No. 1 at 3-5. As a result, plaintiff was left with chronic pain due to his degenerative disc syndrome. Id.

III. Defendant's Motion for Summary Judgment

A. Defendant's Arguments

Defendant argues that he is entitled to summary judgment because undisputed evidence shows he was not deliberately indifferent to plaintiff's serious medical needs but, to the contrary, provided medically appropriate care and treatment for plaintiff's medical condition. ECF No. 44-2 at 15-20. Defendant also argues that plaintiff failed to exhaust administrative remedies prior to filing suit and that he is entitled to qualified immunity. Id. at 20-26.

B. Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Plaintiff has also failed to file a separate document in response to defendant's statement of undisputed facts that identifies which facts are admitted and which are disputed, as required by Local Rule 260(b).

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted).

Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff opposes defendant's motion and argues that defendant did not provide appropriate treatment and is not entitled to qualified immunity. ECF No. 58 at 2-4, 9-10. Plaintiff also appears to argue that he did exhaust his administrative remedies or that, alternatively, such remedies were effectively unavailable to him. Id. at 5-6.

C. Defendant's Reply

In his reply, defendant argues that plaintiff's conclusory statements regarding exhaustion fail to show that plaintiff exhausted his claim or that administrative remedies were unavailable. ECF No. 62 at 3-8. Defendant further argues that plaintiff has failed to establish deliberate indifference or that he is not entitled to qualified immunity. Id. at 9-12.

IV. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

////

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal

quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendant simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with his motion for summary judgment. ECF No. 44-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V.       Objections to Plaintiff's Evidence

Defendant objects to a number of the medical records submitted by plaintiff in opposition to the motion for summary judgment on the ground that they are incomplete. ECF No. 62 at 2-3. He also objects to plaintiff's handwritten comments on some of those records and requests they be stricken. Id. at 3.

Defendant does not challenge the authenticity of the records, and plaintiff would likely be capable of authenticating them at trial. Accordingly, the court will not disregard the records. However, the court is mindful that incomplete records may not accurately reflect the circumstances recorded therein and will consider them only for limited purposes where appropriate (e.g., date of a medical encounter, plaintiff's chief complaint on that date, etc.). Where the complete record has been provided by defendant, the court will rely on defendant's copy of the record. With respect to plaintiff's handwritten notes, they will be considered to the

extent they clarify plaintiff's arguments or attempt to identify evidence but will not be considered as evidence themselves.

### VI. Undisputed Material Facts

Plaintiff did not separately respond to Defendant's Statement of Undisputed Facts (DSUF), and the facts are therefore deemed undisputed except as otherwise discussed. Additional facts have been taken from plaintiff's medical records and grievances as appropriate.

#### A. The Parties

At all times relevant to the complaint, plaintiff was an inmate at California Substance Abuse Treatment Facility (SATF) and defendant was employed there as a physician and surgeon. DSUF (ECF No. 44-3) ¶¶ 1-2.

#### B. Medical Treatment

Plaintiff's medical records indicate that he had a documented history of chronic back pain prior to being seen by defendant for the first time, and that he had been taking gabapentin since at least 2014. ECF No. 44-5 at 13; ECF No. 58 at 33, 107.

On April 9, 2019, defendant saw plaintiff for the first time for a chrono update and medication review. ECF No. 44-5 at 20. Defendant observed that plaintiff walked with a normal gait and without assistance, showed no objective signs of distress or acute pain, and his spinal imaging report reflected mild to moderate degenerative findings that were standard and appropriate for his age. DSUF ¶¶ 4, 7, 9. Defendant states that he and plaintiff discussed plaintiff's medical history and current medical issues—including his spinal injury, current associated pain, and medications—in order to develop a treatment plan. DSUF ¶ 5-6. Plaintiff reported that his spine was injured in an accident in 1996 and that he experienced intermittent, moderate, sharp pain in his mid- and lower-back and left buttock but did not indicate impaired function or difficulty performing daily activities. DSUF ¶¶ 6-7. When defendant raised the issue of transitioning plaintiff off gabapentin and onto a formulary medication, plaintiff expressed that he did not want to transition to another medication and left before defendant finished the exam. DSUF ¶ 14; ECF No. 44-5 at 20. Plaintiff disputes that any discussion occurred and states that defendant told him to leave before any discussion took place. ECF No. 58 at 2, 7, 9, 13.

At the time of the appointment, plaintiff was taking 1200 mg of gabapentin three times daily. DSUF ¶ 8. Gabapentin, which has potential for abuse and misuse, is a non-formulary medication within the prison and is not approved by the United States Food and Drug Administration (FDA) for chronic back pain, though it is sometimes used off label for that purpose. DSUF ¶¶ 10-11. The prison's policy is to try FDA-approved medications that are on the formulary list before trying non-formulary medications. DSUF ¶ 12. Based on these factors, defendant decided to slowly wean plaintiff off gabapentin and onto a formulary, FDA-approved medication, if indicated. DSUF ¶ 13.

Plaintiff's medical records indicate that on June 5, 2019, a nurse contacted defendant to clarify plaintiff's plan of care after receiving a health care grievance (SATF HC 19000529) plaintiff had submitted requesting that his gabapentin not be discontinued. ECF No. 44-5 at 24-25. The nurse noted that plaintiff was currently being tapered off gabapentin, his prescription had been reduced from 1200 mg three times a day to 1200 mg twice a day, and that defendant advised plaintiff would be prescribed duloxetine once his gabapentin taper was completed. Id.

On June 20, 2019, defendant saw plaintiff regarding an unrelated x-ray and pre-operative clearance. DSUF ¶ 16. At the time, plaintiff was in the process of weaning off gabapentin and was taking a reduced dose of 600 or 900 mg twice daily.[1] DSUF ¶ 17; Kokor Decl. ¶¶ 11-12 (ECF No. 44-4 at 4); ECF No. 58 at 98.

On July 1, 2019, defendant saw plaintiff for post-surgical treatment following his septum surgery. DSUF ¶ 18. During the appointment, plaintiff complained of post-operative pain and requested an extension of his prescription of Tylenol with codeine, which was granted. Id. Upon physical examination, defendant observed no objective findings to change the treatment plan for plaintiff's chronic pain management. DSUF ¶ 19. Plaintiff's gabapentin taper was continuing, and he was taking 600 milligrams daily, in divided doses, plus ibuprofen. DSUF ¶ 19. Defendant

---

[1] Defendant states that plaintiff was taking 900 mg twice daily. DSUF ¶ 17. However, the records cited show three entries for gabapentin: one at 600 mg twice a day, one at 300 mg twice a day, and one at 300 mg daily. ECF Nos. 44-4 at 20; ECF No. 44-5 at 26. Evidence submitted by plaintiff indicates he was prescribed 600 mg twice a day. ECF No. 58 at 98. Plaintiff's exact dosage at the time is therefore unclear. Regardless, any difference between a 600 mg or 900 mg dose is ultimately immaterial.

states that plaintiff's ibuprofen prescription was renewed but the records cited do not support this. ECF No. 44-4 at 36-38; ECF No. 44-5 at 28-30.  However, records submitted by plaintiff reflect that the prescription for ibuprofen was renewed the day before, on June 30, 2019.  ECF No. 58 at 97.  Plaintiff asserts that ibuprofen is not appropriate for his condition and notes on the record for the July 1 appointment that his gabapentin was not removed until defendant got mad at him.  Id. at 14-15, 60, 105.  It is unclear whether he is disputing that his gabapentin was tapered, the reason for the discontinuation, or when he stopped receiving the medication.

On July 5, 2019, plaintiff submitted a health care services request stating that he had pain from surgery and it was an emergency.  ECF No. 44-4 at 40.  The form reflects that he was seen by a nurse the same day.  Id.  Medication records submitted by plaintiff indicate he was prescribed an additional three days of Tylenol with codeine.  ECF No. 58 at 97.

On July 9, 2019, plaintiff was seen by a mental health care provider who recorded that plaintiff reported that he was being gradually taken off gabapentin.  ECF No. 44-5 at 31.  His medication records indicate that this was also the date his Tylenol with codeine prescription expired and there is no indication it was renewed.  ECF No. 58 at 97.

On July 15 or 16, 2019, plaintiff's gabapentin taper was complete, and he was fully weaned off gabapentin.[2]  DSUF ¶ 20; ECF No. 58 at 97.  Defendant states that plaintiff continued to be prescribed ibuprofen for pain management, DSUF ¶ 20, and plaintiff's deposition testimony reflects that he always had prescription-strength ibuprofen and Tylenol while he was at SATF, PL's Depo. at 132:13-133:9 (ECF No. 44-7 at 21-22).  Medication records submitted by plaintiff indicate that his ibuprofen prescription expired on July 7, 2019, and was not renewed until August 28, 2019.  ECF No. 58 at 97.

On July 17, 2019, plaintiff was seen by a registered nurse regarding a possible allergic reaction.  ECF No. 44-4 at 44.  The records indicates that plaintiff was not prescribed any pain medication at that the time of the appointment, defendant was contacted, and plaintiff was to stop

---

[2] Defendant states that plaintiff completed the taper on July 15, 2019, DSUF ¶ 20, while records attached to plaintiff's opposition indicate that his prescription ended on July 16, 2019, ECF No. 58 at 97.  However, the one-day difference is immaterial to resolving the motion for summary judgment.

8

ibuprofen and start Tylenol. Id. at 45, 53. A health care services request form also reflects that plaintiff's request for ibuprofen was processed by nursing staff the same day and that a refill was ordered. Id. at 55. Plaintiff's medication record does not reflect a renewed prescription for ibuprofen or a prescription for Tylenol. ECF No. 58 at 97.

On August 1, 2019, plaintiff submitted a health care services request seeking pain medication for the pain from his recent nose surgery. ECF No. 44-5 at 33. On August 3, 2019, he saw a registered nurse in response to the request and the nurse noted that plaintiff was requesting Tylenol 3, currently had Tylenol for the pain, and stated that he would wait until Monday to request Tylenol 3 from the doctor. Id. Medication records submitted by plaintiff indicate that his prescription for Tylenol 3 expired on July 9, 2019, and that it was not renewed. ECF No. 58 at 97.

On August 5, 2019, plaintiff was seen by a registered nurse to follow up on his post-surgical pain. ECF No. 44-5 at 34. The nurse noted that a doctor was to be consulted for pain management, there were no new orders received, a doctor other than defendant was consulted, and plaintiff was to "continue with Ibuprofen and Tylenol[ ]with food." Id. The record indicates that plaintiff did not have an active prescription for pain medication at the time. Id.

On August 9, 2019, plaintiff saw a registered nurse for an unrelated podiatry issue. ECF No. 44-5 at 37. His active medications at the time did not include any pain medications. Id. at 38.

On August 28, 2019, defendant saw plaintiff for the last time. DSUF ¶ 20. During the appointment, defendant examined plaintiff—whose back showed no interval changes from his previous examination—and determined there was no medical indication to adjust his treatment plan. Id. The record does not indicate any active pain medications or an order for any pain medications, ECF No. 44-5 at 47, but subsequent records and plaintiff's medication record reflect that defendant ordered plaintiff more acetaminophen and ibuprofen on August 28, 2019, id. at 51; ECF No. 58 at 97.

During the time plaintiff was under defendant's care, he did not submit any health care service forms regarding chronic back pain or ibuprofen's insufficiency for his pain. DSUF ¶ 21.

C.   Grievances

Plaintiff is familiar with the health care grievance process and submitted two grievances related to the underlying complaint: SATF HC 19000529 (SATF grievance) and SCC HC 20000131 (SCC grievance). DSUF ¶¶ 23, 26.

On April 9, 2019, plaintiff submitted the SATF grievance about his gabapentin being discontinued. ECF No. 44-6 at 12. On June 14, 2019, the institutional-level response found plaintiff did not meet the criteria for gabapentin and explained he could appeal the decision if dissatisfied and that an appeal to headquarters exhausted administrative remedies. ECF No. 44-6 at 10-11. Plaintiff decided not to pursue the grievance further and instead chose to wait for a new care provider. DSUF ¶¶ 24, 26; PL's Depo. 120:5-123:22 (ECF No. 44-7 at 9-12).

On April 28, 2020, plaintiff submitted the SCC grievance concerning medical treatment received for two back fractures, the use of Tylenol for pain, and his intent to sue CCHCS. ECF No. 44-6 at 24. The initial appeal did not identify defendant or describe his involvement in the health care issue. Id. On June 25, 2020, the first-level response was delivered to plaintiff and addressed plaintiff's care since transferring to Sierra Conservation Center. Id. at 26-27. It did not mention gabapentin, defendant, or his treatment at SATF. Id. The same day, plaintiff prepared his appeal of the institutional-level response where, for the first time, he mentioned gabapentin and asserted the care provider at SATF had taken him off the medication. Id. at 25. On June 28, 2020, staff signed the envelope indicating receipt of the appeal for mailing, and it was received at headquarters on July 3, 2020. Id. at 24, 30. On September 25, 2020, headquarters completed the appeal review and mailed or delivered it to plaintiff. Id. at 22-23, 25. The response stated that no intervention was warranted and that plaintiff's administrative remedies were exhausted. Id. at 22-23.

VII.   Discussion

A.   Exhaustion

"Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc). In this circumstance, plaintiff admittedly did not exhaust the SATF grievance and exhausted the SCC grievance, which

arguably exhausts plaintiff's claim, after filing the underlying complaint. However, in light of the Ninth Circuit's decision in Saddozai v. Davis, 35 F.4th 705, 706, 709 (9th Cir. 2022) (exhaustion defects can be cured by amendment), and the complications that would arise should plaintiff seek to amend the complaint while these findings and recommendations are pending, the court declines to address the exhaustion. As the court now explains, defendant is entitled to summary judgment on the merits even if plaintiff had exhausted the claim prior to initiating this lawsuit or could cure an exhaustion defect by amendment.

### B. Deliberate Indifference to a Serious Medical Need

#### i. Legal Standard

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" Toguchi, 391 F.3d at 1058 (alteration in original) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

////

ii. Analysis

It is undisputed that defendant discontinued plaintiff's prescription for gabapentin. Moreover, while plaintiff makes vague objections regarding when his prescription was discontinued, the undisputed evidence clearly shows that plaintiff was tapered off the medication rather than having the medication discontinued all at once. Accordingly, the parties' disputes revolve around whether defendant's decision to discontinue the medication in the first place was appropriate and whether defendant provided an appropriate substitute medication. On summary judgment, the question is whether plaintiff has identified any material factual disputes as to those issues.

Defendant argues that his decision to discontinue gabapentin and instead prescribe Tylenol and ibuprofen for plaintiff's chronic back pain was medically appropriate and that plaintiff's challenge to his decision is nothing more than a difference of opinion as to the appropriate course of treatment. ECF No. 44-2 at 15-20. In support of this argument, defendant provides evidence that gabapentin was not medically indicated for plaintiff's condition based on his training and experience, his evaluation of plaintiff, and review of plaintiff's medical records, as well as the applicable FDA and CCHCS guidelines. DSUF ¶¶ 5-13. Defendant provides further evidence that plaintiff was prescribed other pain medication during and after the taper of gabapentin, and that plaintiff did not raise any complaints regarding his chronic back pain or the insufficiency of his pain medication during the time defendant was plaintiff's treating physician. DSUF ¶¶ 18-20, 21-22.

In opposition, plaintiff argues that his medical file clearly showed that he had a painful condition that required treatment with gabapentin, that defendant knew taking him off gabapentin would leave him in pain, and that he was ultimately placed back on gabapentin three years later. ECF No. 58 at 1-2, 7-8. Plaintiff also argues that a doctor's report is not necessarily true, that defendant did not discuss anything with him, and that the decision to remove his gabapentin was ultimately driven by defendant's "personal issues" with plaintiff because plaintiff interrupted his lunch. Id. 58 at 9-10.

While plaintiff's medical records do demonstrate that he had a history of chronic back

pain and had been on gabapentin for at least five years by the time he first saw defendant, he provides no evidence to support his assertion that tapering him off gabapentin and substituting it with ibuprofen and Tylenol was medically inappropriate. Plaintiff's own, unqualified opinion and the fact that he was eventually placed back on gabapentin three years later do not establish that the decision was medically unacceptable under the circumstances at the time it was made. Moreover, while plaintiff did submit an initial grievance complaining about begin taken off gabapentin (ECF No. 44-6 at 12), he provides no evidence that he communicated to defendant that the pain medication he was prescribed for his chronic back pain was insufficient. To the extent plaintiff implies that his medical records are inaccurate, the only inaccuracy he identifies is the representation that defendant talked with him about taking him off gabapentin. Yet even assuming defendant did not discuss the medication change with plaintiff, that is not sufficient to render the decision medically unacceptable, and plaintiff's assertion that defendant removed him from gabapentin because he interrupted defendant's lunch is nothing more than speculation. See Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive.").

Finally, although the records indicate a potential gap in plaintiff being prescribed pain medication, plaintiff testified at his deposition that he always had prescription-strength Tylenol and ibuprofen while at SATF. PL's Depo. at 132:13-133:9 (ECF No. 44-7 at 21-22). Moreover, even assuming there truly was a gap in plaintiff receiving pain medication,[3] there is no evidence that it was the result of anything other than negligence, which is insufficient to establish deliberate indifference. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice." ). The apparent lapse occurred between

---

[3] Plaintiff's medication record and other records indicate that plaintiff did not have any active prescriptions for pain medication between July 16, 2019, when he completed his gabapentin taper and August 28, 2019, when he saw defendant for the last time. See ECF No. 44-4 at 45; ECF No. 44-5 at 34, 38; ECF No. 58 at 97.

plaintiff's final two visits with defendant, and plaintiff fails to identify any specific instances during that time where he requested treatment from defendant and was denied or ignored. Notes from plaintiff's encounters with other medical staff during this period indicate that prescriptions for Tylenol and ibuprofen were to be ordered. Assuming plaintiff's medication record accurately reflects that the medications were not ordered, there is no evidence that defendant was the one who failed to order them, let alone that he did so intentionally.

As set forth above, the undisputed evidence demonstrates that defendant was not deliberately indifferent to plaintiff's serious medical need and defendant's motion for summary judgment should be granted.

### C. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling Saucier's requirement that the two prongs be decided sequentially). Since the facts taken in the light most favorable to plaintiff do not show the violation of a constitutional right, it is not necessary for the court to address defendant's qualified immunity argument.

### D. Conclusion

For the reasons set forth above, defendant's motion for summary judgment should be granted on the ground that defendant did not violate plaintiff's Eighth Amendment rights and the court declines to address defendant's exhaustion and qualified immunity arguments.

## VIII. Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that defendant's motion for summary judgment be granted because you have not provided evidence showing that defendant was deliberately indifferent to

14

your serious medical needs. It is undisputed that you were prescribed alternate medication for your chronic pain and there is no evidence that any lapses that may have occurred were due to anything more than negligence. There is no evidence showing that discontinuing gabapentin and prescribing ibuprofen and Tylenol was medically unacceptable under the circumstances.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 44) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 2, 2023

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE